# PRACTICE REPORTS.

## SUPREME COURT.

FRANK LOBDELL and others, infants by FRANCIS BICKERSTAFF, their guardian, respondents agt. AMMON LOBDELL and others, appellants.

In an action for the *specific performance* of an agreement to convey land, the rule is not as strict now as formerly, in reference to the *proof* of the *exact agreement* alleged in the complaint.

If the allegations of the cause of action are not unproved in their entire scope and meaning ; and the variance is not material · and no one has been misled ; and especially if no question of variance was raised at the trial, the objection taken on appeal that the agreement as set forth in the complaint is widely different from that found by the referee, will be disregarded.

In an action by *heirs at law* of an intestate son, claiming a specific performance of an oral agreement for the conveyance of land, against the *devisees* of the father, one of the defendants, a devisee, cannot be a witness on his own behalf to prove a conversation between the father and son, and in which the witness took part, respecting the agreement by the father to give the son a deed of the property, on the performance of certain conditions.

And it is not material whether the witness took part in the conversation or not. The broad objection is that he proposed by his evidence of the confessions or declarations of the deceased father of the plaintiffs (the son) to defeat their title as the heirs at law, and to establish his own title, he being a defendant. If the case does not come literally within the words of the statute (*Code*, § 399), "any transaction or communication had personally by such party with the deceased" father of the plaintiffs, it is within the intention of the statute.

It is a rule in equity that a specific performance of an agreement will not be decreed unless the agreement is founded upon a *sufficient consideration*. The plaintiff must make a meritorious case.

*Held*, in this case that assuming the facts as found by the referee, the case of the plaintiffs was meritorious, and they were entitled to the relief demanded ; although there was much doubt whether the agreement as found by the referee was ever made. The case however was not destitute of equity. The evidence showed an intention on the part of the father to give the land to his son, when he (the father) should die ; and some of the evidence tended strongly to show that he had already given him the land.

*Argued at Erie General Term May,* 1866.

*Before* GROVER, *P. J.,* DANIELS, MARVIN *and* DAVIS, *Justices, and decided Erie General Term September,* 1866.

APPEAL from judgment entered on the report and decision of a referee. The facts sufficiently appear in the opinion of the court.

GEO. W. COTHRAN, *for plaintiffs.*

I. The facts found by the referee are fully sustained by the evidence.

The status of the parties as found was conceded:

That in 1846, Pliny Lobdell was seized of a farm of 57 37-100 acres of wild land in town of Hamburg, was admitted.

That pursuant to a verbal agreement between Pliny and Seymour, in 1846, Seymour entered into possession of the south fifteen acres of this farm.

That Seymour, in conjunction with Pliny, built a log house thereon, and in 1847, moved with his family into it, and finished it off while living in it.

That no part of it was cleared when Seymour moved on it.

That Seymour cleared it all up but about three acres.

And fenced it.

Reduced it to cultivation.

Raised crops on it.

Sold the wood, and logs and bark, and had the avails.

Built a framed barn.

Dug a well.

Planted fruit trees.

Built a framed house and moved in it in 1852, and lived therein until his death.

He and Pliny built line fence between the fifteen acres and rest of the farm.

He continued in possession from 1846 to May, 1864, when he died.

And paid the taxes thereon.

All this was done with Pliny's knowledge.

He claimed the land as his own to Pliny himself.

As well as to other members of Pliny's family.

And to his neighbors.

He claimed that Pliny had promised him a deed of it. He told Pliny so. And also told his neighbors.

It was always spoken of in Pliny's family as Seymour's lot.

He frequently asked his father for a deed of it.

Pliny declined giving it, saying his word was as good as a deed.

Pliny told many of his neighbors that it was Seymour's land—that he had set it off for him as Seymour had worked hard for him, and showed Oliver Pierce the line clear through between the two parts of the lot.

That he intended to give him a deed of it. And after Seymour's death, he said to Pierce that "he meant to have deeded it to Seymour before he died, but did not."

Each of these facts is either conceded, or proved distinctly—nearly every one of them by defendants witnesses.

The only points seriously combatted by defendants' counsel in submitting the case to the referee, were as to the nature of the verbal agreement and the character of Seymour's possession under it.

The single question of fact to be determined here is what was the agreement? The nature of which will necessarily characterize Seymour's possession.

That the possession of Seymour and his acts in relation to the land were clearly in pursuance of and conformity to this agreement, within the rule, will scarcely be controverted. The referee's finding is explicit.

The testimony of Anna Lobdell, Seymour's widow and plaintiff's mother, fully sustains the referee, and would have warranted him in finding a contract of purchase and payment of consideration.

Seymour desired to go west, and by reason of the offer of this land, he was detained from going.

But independent of her testimony, the evidence of Nancy Lobdell Pliny's widow and Seymour's mother—notwith-

standing the bitterness of her feelings towards Seymour's family, taken in connection with the repeated declarations of Pliny Lobdell, that these fifteen acres were Seymour's, and the persistent claims of ownership of the land made by Seymour to his father, to William Russel, as well as to his neighbors; his continued claims that Pliny had promised him a deed of it, and his oft repeated demand of his father for the deed, most clearly and decisively sustain the referee's finding.

No man possessed of a grain of sense would have so continuously and pertinaciously insisted that the land was his, that his father had promised him a deed of it, and follow it up with his requests for the deed, had there been no agreement that this land was Seymour's. Then add the acts and declarations of Pliny, and there can be no doubt of it.

A great variety of declarations of Seymour tending to show that he did not claim to own this land, were proved on the part of the defendants. By reference to the evidence, it will be seen that nearly all of these witnesses are relatives of the defendants, and some of them with impaired characters.

But the question as to whom to believe and whom to disbelieve, was purely a matter for the referee, and his decisions in that respect will not be disturbed (*Eschbaugh* agt. *Syracuse Distilling M. and B. Co.* 27 *How. Pr. R.* 125).

It is proper that I should here state that the finding of the referee, that subsequent to Seymour's death, Pliny ousted Seymour's family and took possession of this land, is a mistake. The plaintiffs have at all times been, and now are in possession of it. The finding is not of such a material fact as to vitiate his conclusions.

II. Part performance of a parol agreement for the conveyance of real property, will take the case out of the statute, and specific performance will be decreed. (*Williston* agt. *Williston,* 41 *Barb. S. C. R.* 635, 643; *McCray* agt. *McCray,* 30 *Barb. S. C. R.* 633; *Surcombe* agt. *Pinninger,* 17 *Eng. L. and Eq. R.* 212; *Traphagen* agt. *Traphagen,* 40 *Barb. S. C.*

R. 537; 2 *Story's Eq. Juris.* § 761; *Marphet* agt. *Jones*, 1 *Swanst.* 181.)

The agreement in this case was that if Seymour would go on to and clear up, cultivate and improve these fifteen acres, Pliny would convey the same to him by deed.

This agreement was performed by Seymour, not only in part, but entirely. He expended not only his time, but his money in improving this land, with the knowledge of Pliny. There is no means by which his heirs can be adequately indemnified, save by compelling a conveyance to be executed. Not only would it be a hardship, but a fraud upon these children to permit these defendants to deprive them of this little patrimony left them by their father; and it is their all of this world's goods. This case comes clearly within the rule laid down by Justice STORY, "that nothing is to be considered as a part performance, which does not put the party into a situation, which is a fraud upon him, unless the agreement is fully performed." (2 *Story's Eq. Juris.* § 761; *Malins* agt. *Brown*, 4 *Comst. R.* 403.)

To permit the defendants to interpose the statute here as a defense, would be to make it a statute to protect frauds, instead of a statute to prevent them.

III. There was a sufficient consideration to sustain this agreement. There was both a good consideration and a valuable one.

The grantee was the grantor's son, and the son whom the grantee has repeatedly informed his neighbors was the only one who remained home and worked for his father.

Then Seymour proposed to go west and purchase a farm, and to induce him not to go, Pliny agreed that if he would remain, and go on to and clear up, cultivate and improve these fifteen acres, the land should be his, and he would convey it to him by deed. Seymour agreed to it and fully performed the agreement.

The whole farm was wild lands. To procure these fifteen acres to be cleared up and improved, would enhance the value of the remaining portion, vastly more than the value of the whole as wild lands. In securing this, as well as a

place to board his laboring men in clearing up the other part of the farm, Pliny received a valuable consideration amply sufficient to sustain the agreement.

Then there was the time and money expended by Seymour in improving the land.

IV. The variance between the allegations in the complaint and the proof as to the quantity of land, is not a material variance (*Code*, §§ 169, 170, 171).

There was no question as to this variance, raised at the trial. Had there been, it could have been corrected. It is not too late even now, if the court regards it of any importance (*Harris* agt. *Knickerbacker*, 5 *Wend.* 638).

The defendants not having taken the objection at the trial, it is waived. (*Pike* agt. *Evans*, 15 *J. R.* 210; *Shall* agt. *Lathrop*, 3 *Hill*, 237; *Lawrence* agt. *Baker*, 5 *Wend.* 301.)

The cases of *Harris* agt. *Knickerbacker* (*supra*) and *Phillips* agt. *Thompson* (1 *Johns. Ch. R.* 131), were cases which arose under the former practice, when the rules relative to allowing amendments to pleadings, were more strict than under the Code. An examination of these cases show that they were both sustained, although reversed on particular grounds, so as to enable the court below to proceed in the manner directed by the court of review.

So to as to the counsel's objection that Seymour did not take possession of fifteen acres—that there is not fifteen acres within the fence. As to this objection, the referee held that there was no proof how much land was included within the fence, but that the agreement related to fifteen acres. This court ought not to interfere with the judgment on mere suggestion of counsel, unsupported by any evidence. It was the fault of the defendants that no proof was offered on this point—the plaintiffs being content to take the fifteen acres, even if the part fenced off contained more than that amount.

V. There is no error in the rulings of the referee in excluding the testimony offered at folios 147 and 151.

The plaintiffs are the heirs at law of Seymour Lobdell, deceased, and claim title to the *locus in quo*, as such heirs, immediately through Seymour. The witnesses offered are

defendants, and defend as devisees of Pliny Lobdell, and as such claim the title to this land.

No matter about the peculiar phraseology of section 399 of the Code, its obvious meaning and intention are to prevent a party to an action, who claims title to the subject matter of the action, from testifying in his own behalf as against heirs at law, to any matter or thing which he learned or acquired personally from their ancestor. The section was intended to embrace, not only what the ancestor said personally to the witness, but what he said in the witnesses' presence—to close the mouth of a living party to all verbal information he may have acquired, in any manner, from the ancestor of the plaintiffs; to withhold from the living party the opportunity, as against the representatives of the deceased, to testify to that which, if the dead could arise and speak, they might controvert; to that which no living tongue can speak, save that of the living interested party.

Such was the view the learned referee took of the section; and I submit that he was correct.

The sole question of construction in *Simmons* agt. *Sisson* (26 *N. Y.* 264), was whether, under the Code prior to the amendment of 1862, a " conversation " was a " transaction." The court held it was not.

The case was tried before the amendment of 1862, and what Judge ROSEKRANS says in relation to the amended section has not the force of an adjudication which this court is bound to follow.

VI. Should the court be of the opinion that the evidence offered to be given by George Lobdell, as to the conversation heard by him was competent, it does not necessarily follow that a new trial must be granted.

The only point litigated was " about the terms upon which Seymour entered upon the land in question."

The defendants had already examined twelve witnesses on this point, and subsequently called three more, who, with George Lobdell, who testified generally, except as to this conversation, made sixteen witnesses. The plaintiffs called but *nine* in all.

The rejected testimony was merely cumulative, and could, by no possibility have changed the result, especially as the referee decided the case in favor of the plaintiffs mainly on the testimony of Nancy Lobdell, the defendants' witness.

The well settled rule in courts of equity is that a new trial will not be granted on account of the reception of improper or the rejection of competent evidence, where it is plain to be seen that the result would have been the same had the improper evidence been rejected, or the competent evidence received.

When the result is satisfactory, courts of equity never reverse judgments on account of technical objections. (1 *Barb. Ch. Prac.* 459; *Baker* agt. *Ray,* 2 *Russel Ch. R.* 63, 66, 76–7; *Bootle* agt. *Blundell,* 19 *Ves. Ch. R.* 503.)

*Simmons* agt. *Sission* (*supra*), was an action at law where technical rules are enforced.

It is confidently submitted that this is a proper case for the enforcement of the equity rule.

H. BOIES *and* P. G. PARKER, *for defendants.*

The complaint alleges that Pliny Lobdell, for a good and valuable consideration, paid by Seymour Lobdell, sold and by parol conveyed to said Seymour, certain premises particularly described therein containing about fourteen acres. That he delivered to Seymour the possession thereof, and agrees to execute to him a deed at any time on request.

The answer denies the agreements charged. The referee finds that Pliny being the owner of a wild lot, " made a verbal agreement with Seymour that if he, Seymour, would take possession of, clear up, reduce to cultivation and make improvements upon a part of said piece of wild land to be taken off the southerly end thereof, the said fifteen acres should become and be the property of him, the said Seymour, and that he, the said Pliny, would convey the same to him by a sufficient deed of conveyance for that purpose."

These agreements are widely different. The one declared

on is a sale.    The one proved an agreement to give the land if Seymour clears it up.

One is a sale of fourteen acres of land described by metes and bounds.    The other an agreement to give fifteen acres. The one an agreement to execute a deed upon request.    The other an agreement to execute it if Seymour would clear up and improve the land.

To entitle the plaintiffs to recover, they must prove the identical agreement set out in the complaint.    (*Phillips* agt. *Thompson*, 1 *Johns. Ch.* 131; *Harris* agt *Knickerbacker*, 5 *Wend.* 638–646; *Wilde* agt. *Fox*, 1 *Rand.* 165–170; *Byrne* agt. *Romaine*, 2 *Edw.* 445.)

In *Phillips* agt. *Thompson*, the rule is stated as follows : " To entitle the party to take the case out of the statute on the ground of part performance of the contract, he must make out by clear and satisfactory proof the existence of the contract as laid in his bill and the act of part performance must be of the identical contract set up by him.    It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill."

In *Harris* agt. *Knickerbacker*, decided in the court of errors, the decree of the chancellor was reversed because the plaintiff had declared on a contract where the purchase money was payable in instalments, with interest, and proved a contract by which the purchase money did not draw interest.

II. To entitle the plaintiffs to a judgment under the agreement found by the referee, they must prove that Seymour performed the conditions upon which he was to have the land.

He certainly could not be entitled to land that he never possessed, and yet a part of the land which the judgment directs these defendants to convey he never did possess.

III. Can such an agreement as is found by the referee, be enforced by a court of equity, especially where the defendants offer to show that the plaintiffs suffer no pecu-

niary loss by reason of the non-performance of the agreement?

In 4 *Kent's Commentaries*, 451, it is said : " The ground of this interference of chancery is fraud in resisting the completion of an agreement partly performed; and which part performance would work a fraud upon the party unless the agreement was carried into complete execution."

In *Harris* agt. *Knickerbocker* (5 *Wend.* 656), Senator OLIVER in delivering the opinion of the court says : " The specific execution of parol agreements is decreed in chancery for the purpose of preventing fraud, * * * the plaintiff should prove what the contract was in fact, and the extent of its execution, and what the injury and fraud consists in."

In *Phillips* agt. *Thompson* (1 *Johns. Ch.* 131), the chancellor says : " I agree with the wise and learned judges who have declared that the courts ought to take a stand against any encroachment upon the statute, and not to go one step beyond the rule and precedents already established."

I know of no reported case in which it is held that an agreeement to give away real estate can be enforced by a court of equity, or that any other agreement to convey can be enforced unless a violation of that agreement would impose a pecuniary loss upon the party asking its performance.

IV. Another rule requires that an agreement to be enforced must be certain in its terms and mutual in its character (*Germon* agt. *Machin*, 6 *Paige*, 288).

In this case a promise to convey premises to a son in consideration of his supporting the parent, there being no agreement on his part to support the parent, it was held could not be enforced.

V. The referee erred in excluding the evidence of Ammon and George R. Lobdell, as to the arrangement under which Seymour took possession of the land in question.

The exceptions in section 399 of the Code, as amended in 1865, so far as they relate to this case, must read as follows :

Provided however, that * * * a party to an action (shall not) be examined in his own behalf in respect to any transaction or communication had personally by said * * party with a deceased person, against parties who are the heirs at law of such deceased person, where they have acquired title to the cause of action immediately from said deceased person, or (against parties) who have been sued as such * * * heirs at law.

This provision, as I understand it, excludes the defendants from the right to testify to any transaction had personally with Seymour Lobdell and the plaintiffs from the right to testify to any transaction had between them and Pliny Lobdell, but it does not exclude either party from the right to testify as to transactions between Seymour and Pliny.

There is no stronger reason for rejecting the evidence of the defendants in this case than there is for excluding the evidence of all parties as to every transaction not within the personal knowledge of their adversaries.

Such a construction is not in accordance with either the spirit or the letter of the statute.

VI. Is it just that these defendants should be made to pay the costs of this trial? It seems to me, inasmuch as they have been able to defend successfully against the only claim of right which the plaintiffs ever made to them, and are beaten upon an agreement they never heard of until it appeared in the evidence upon the trial and the findings of the referee, that it is a little hard to compel them to pay the costs of this trial.

*By the court,* MARVIN, J. Action to compel specific performance of parol contract concerning land.

The plaintiffs allege in their complaint that in November, 1846, Pliny Lobdell, for a good and valuable consideration paid by Seymour Lobdell, sold, and by parol conveyed to Seymour Lobdell a certain piece of land, describing it. Seymour Lobdell entered into possession and made improvements. He died intestate in May, 1864. The plaintiffs are his heirs at law. He was the son of Pliny, who died in

November, 1864, having devised the land in question to some of the defendants.

The referee found the agreement was "that if Seymour would take possession of, and clear up, reduce to cultivation and make improvements upon a part of said piece of wild land containing fifteen acres, to be taken off the southerly end of said lot, the fifteen acres should become and be the property of Seymour, and that he, Pliny, would convey the same to him by a sufficient deed for that purpose."

The whole tract of land owned by Pliny, the father, was some fifty-eight acres. The referee found that Seymour took possession of the fifteen acres under the agreement; that he built a log house aided by his father, and moved his family into it in the fall of 1847; he cleared all the land except about three acres and cultivated it. A line fence was built by him and his father between the fifteen acres and the residue of the land, and Pliny, the father, improved and occupied the residue. Seymour built a barn on the fifteen acres, and in 1852 a framed house. In short, the finding of facts by the referee shows that he fully performed on his part. He claimed to be the owner of the fifteen acres, and on several occasions requested his father to convey the land to him. His father refused, but frequently said he should give him a deed when he, Pliny, died.

The counsel for the appellants objects that the agreement as set forth in the complaint is widely different from that found by the referee; that the former was a sale and the latter an agreement to give the land, if Seymour cleared it up; and he claims that in this action there can be no recovery unless the identical agreement set out in the complaint is proved; and he cites several cases which were decided prior to the Code. I apprehend that the rule is not as strict now as it formerly was. This is not a case where the allegations of the cause of action were unproved in their entire scope and meaning; and the variance was not material. No one has been misled. If necessary, the complaint could have been amended, and may be even now. No question of

variance was raised upon the trial (*See Code*, §§ 169, 170, 171, 173). The objection is untenable.

The defendant Ammon Lobdell, a son of Pliny, and one of the devisees of the land, was a witness for defendants. The defendants offered to prove by him a conversation as to the terms·upon which Seymour entered upon the land in question held between Seymour and Pliny in presence of witness, and in which conversation the witness took part. Upon objection the evidence was excluded, and the defendants excepted. The plaintiffs claimed, as the heirs of Seymour, and the witness Ammon claimed as the devisee of his father, Pliny. By the Code (§ 399), a party to an action cannot be examined in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person against parties who are executors, administrators, heirs at law, next of kin, or assignees of such deceased person, when they have acquired title to the cause of action immediately from said deceased person, and have been sued as such by the executors, administrators, heirs at law, next of kin or assignees.

The present action is by the heirs at law of Seymour Lobdell, and it is against the devisees of Pliny Lobdell. The devisee of the land is offered as a witness to prove a conversation between Pliny and Seymour, and in which he took part, for the purpose of defeating the title of the heirs of Seymour and establishing his own title. In my opinion the offered evidence was properly excluded.

The object of the evidence was to show by the declarations or confessions of Seymour Lobdell, facts tending to defeat the title of the plaintiffs, his heirs. The defendant, witness, participated in the conversation; but in my opinion, if he had taken no part in the conversation, he would not have been permitted to give evidence of the conversation of these deceased parties. This question is also in the case of George Lobdell, another defendant and devisee, who was a witness, and the offer was made to prove by him a conversation in his presence between Pliny and Seymour, about the terms upon which the latter entered upon the land in question. In

this offer nothing is said of the witness taking part in the conversation. In my opinion it is not material whether the witness took part in the conversation or not. The broad objection is that he proposed by his evidence of the confessions or declarations of the deceased father of the plaintiffs, to defeat their title as the heirs at law, and to establish his own title, he being a defendant. It may perhaps be said that the case does not come "literally within the words of the statute"—any transaction or communication had personally by the witness with the deceased father of the plaintiff, but in my opinion it is within the intention of the statute. The mischief to be guarded against is obvious. We are referred to *Simmons* agt. *Sisson* (26 *N. Y. R.* 276); in which it was held that a conversation between the deceased and a third party, overheard by the defendant, might be proved by the defendant as a witness—that the hearing of such conversation was not "a transaction had personally between the deceased and the party" within the meaning of the Code. After the trial of that cause the Code was amended by inserting "or communication" after the word "transaction." In that case Justice ROSEKRANS took notice of the amendment of 1862, and remarked that "even as the section now stands, it does not prohibit a party testifying to a conversation between the deceased and a third person heard by the party, and in which he did not participate." This was *obiter*. In the case under consideration both the parties to the conversation are dead. The witness claims title under one of them, and the plaintiffs under the other, and against the party deceased, under whom the witness defendant claims.

It is objected that the agreement as found by the referee ought not to be decreed to be specifically performed. It is argued that it rested upon no sufficient consideration. It is undoubtedly a rule in equity that a specific performance of an agreement will not be decreed unless the agreement is founded upon a sufficient consideration. The plaintiffs must make a meritorious case. In this case, according to the findings of the referee, Pliny Lobdell, the father of Sey-

mour, owned about fifty-eight acres of wild, uncultivated land, and he proposed to his son Seymour, who had recently been married, that he should go on to one end of the land and there clear it up, &c., &c., make improvements, and that he would convey to him fifteen acres off of that end of the land, or in the language of the referee "the fifteen acres should become and be his property, and he, Pliny, would convey it to him." Seymour performed. It was certainly an important undertaking on his part. The clearing up of the land and the erection of the necessary buildings, and it may be that Pliny derived a direct benefit in the enhanced value of his remaining land. He moved on to that a few years after and improved it. This case is much like *Williston* agt. *Williston* (41 *Barb. S. C. R.* 635).

Assuming the facts as found by the referee, I agree with him that the case of the plaintiffs is meritorious, and that they are entitled to the relief given them. Whether the agreement as found by the referee was ever made, I certainly have much doubt. I have read all the evidence with much care. The case was to turn upon the character of the possession of Seymour Lobdell, the father of the plaintiffs. Did he enter into possession in the character of a purchaser and occupy and improve the property as his own? Mrs. Lobdell, the mother of the plaintiffs, was a witness, and states that she was present when the agreement was made between her husband and his father. This was in 1846 or 1847. She says that Pliny told Seymour that he could have that fifteen acres of land for what he owed him; that is what Pliny owed Seymour, and to go on to it and take possession of it, and Seymour told him he would. In her cross-examination she stated that soon after they moved on to the place, she and her husband told Pliny that they wanted a deed, and he said he would not give them a deed until he died, because he wanted to give Seymour the whole fifty-five acres, and that he said this several times.

Joel S. Smith was a witness for the plaintiffs, and stated that he had a talk with Pliny two or three years previous to the trial. Witness inquired about Seymour's health, and

remarked to Pliny that he ought to do pretty well by Seymour, as he had stood by him from a boy, and taking his health into consideration; Pliny said he intended to; that he had set him off fifteen acres of land as his own, and intended to do more at his death if he should not outlive the boy.

Houghton Clough was a witness, and proved that upon his application to Pliny for some whitewood logs, Pliny stated that Seymour had some to sell; witness saw Seymour and bought some logs of him.

Alexander Petrie was a witness; Pliny told this witness that Seymour was pressing him for a deed of the place, and that he did not incline to give him a deed at present; that he considered his word good for that amount of land. This was all the evidence given in chief touching any agreement for a title to the land.

A large number of witnesses, some fifteen or more, were examined by the defendants; a large portion of them were relatives, including Mrs. Pliny Lobdell. Their evidence tended strongly to show that Seymour did not enter upon the land and make the improvements under any agreement by which his father was to convey the land to him, but that the object of Pliny was to provide a home for Seymour (who was much out of health), and that he probably intended to give the fifteen acres to him when he, Pliny, should die.

The evidence shows that Seymour often claimed that his father was to give him a deed, and he often requested a deed; Pliny denied that he was under any obligation to give him a deed, and always refused to do so. It would seem from the evidence of Mrs. Lobdell, the mother of Seymour, that there was at one time an understanding that Seymour should go on to the land (she speaks of fourteen acres) and his brother go on to the other portion (fourteen acres), and use, and improve and occupy the lands respectively, in a manner to please their father, and that they should have it when he died.

That Pliny was in debt to Seymour when he went on to the land, or at any time thereafter, is, I think, clearly disproved. He worked for his father a short time after he was

of age, and by the testimony of the mother he was fully paid for this. It appears that he, Pliny, assisted Seymour about building the house, &c.

When the defendants rested, the plaintiffs called four or five additional witnesses, who testified to conversations with Pliny, mainly to the effect that he, Pliny, had given the fifteen acres to Seymour, or that he recognized the land as belonging to him, or that Seymour was to have the land, or that he had set it off to him. In short, I think the evidence shows an intention on the part of Pliny, that Seymour should have the land when he, Pliny, should die. Some of the evidence tends strongly to show that he had already given the land to Seymour. The case, however, must rest mainly on the evidence of the mother of the plaintiffs, and it must have been mainly upon her evidence that the referee found the agreement. The case is very peculiar. I am not prepared, upon the whole case, to dissent from the conclusion drawn by the referee from the testimony. The witnesses were before him. The case is not destitute of equity, and upon the whole, I think the judgment should be affirmed.

All the judges concurring, judgment affirmed.